**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LEFTY BORRERO-RIVERA, ET AL

    Plaintiffs

           v.

CARLOS M. MOLINA-RODRIGUEZ, ET AL

    Defendants

**Civil No. 10-1937 (SEC)**

**OPINION AND ORDER**

Pending before this Court is Defendants Carlos M. Molina-Rodriguez and Maria A. Marcano-Guerra's motion to dismiss (Docket # 6), and Plaintiffs Lefty Borrero-Rivera and Victor M. Maldonado-Vazquez's (collectively "Plaintiffs") opposition thereto (Docket # 7). After reviewing the filings, and the applicable law, Defendants' motion to dismiss is **DENIED**.

**Factual and Procedural Background**

On September 27, 2010, Plaintiffs filed suit against Defendants in their official and individual capacity seeking damages, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and several state laws, alleging violations to their rights to freedom of speech and association under the U.S. Constitution's First Amendment.[1] Docket # 1.

According to the complaint, Borrero-Rivera and Maldonado-Vázquez have held career positions in the Corrections and Rehabilitations Department of the Commonwealth of Puerto Rico ("CRD") since 2001 and 1996, respectively. On January 1, 2008 they were each assigned to the position of Custody Official III, a career position, subject to completion of a twelve (12) month probationary period and subsequent official notification of their promotion.

On July 16, 2008, Plaintiffs were each selected to occupy the position of Superintendent

---

[1] Plaintiffs voluntarily dismissed their claims under the "contracts clause" contained in Article, Section 10 of the U.S. Constitution. See Docket # 7, p. 1.

of Corrections Institutions, conditioned upon the successful completion of a probationary period of twelve (12) months. They both completed the required Course for Superintendent of Corrections Institutions, and were assigned to CRD institutions to complete their probationary periods. Plaintiffs' job evaluations during the probationary period showed that they each performed their duties satisfactorily, meeting the standards required by the agency. Plaintiffs never received notifications from the CRD informing that they had successfully completed their probationary period.

On November 4, 2008, General Elections were held in Puerto Rico resulting in a victory for the New Progressive Party ("NPP") and its candidate for the office of Governor, Hon. Luis Fortuño. Shortly after taking office, Governor Fortuño appointed Molina to the office of Secretary of the CRD, an appointment that was duly confirmed by the Puerto Rico Senate. Upon taking office, Secretary Molina recruited his trust staff, including Sub-Administrator Marcano, and immediately began to fill the nontrust managerial positions at the CRD with NPP loyalists.

On September 28, 2009, Plaintiffs received written communications signed by Secretary Molina stating that they were being discharged from the position of Superintendent of Corrections Institutions, effective on November 6, 2009, pursuant to Law No. 7 of March 9, 2009, as amended, also known as "Special Law Declaring a State of Fiscal Emergency and Establishing an Integral Plan of Fiscal Stabilization to Save the Credit of Puerto Rico" ("Law 7"). Plaintiffs were still in their probationary periods when Law 7 became effective.

Upon receipt of their termination letters, Plaintiffs requested that their discharge be reevaluated and that they be considered as Custody Officials III, a position that falls under the exemption stated in Article 37.02 of Law 7, insofar as they were never officially named to the position of Superintendent of Corrections Institutions (which does not qualify for the exemption listed in said article). Plaintiffs' requests, however, were denied. Plaintiffs' situation was

presented to Sub-Administrator Marcano, who reaffirmed their discharge and stated that they would "remain out" because they were members of the PDP. Other CRD employees, who were in fundamentally the same situation as Plaintiffs, but were members of the NPP with less seniority than Plaintiffs, were reevaluated, reinstated, and are currently employed by the CRD.

In light of the situation described above, on July 23, 2010, Borrero-Rivera filed an Application for Examination for the Position of Corrections Cadet, an entry-level position in the CRD. Even though he had previously held the position of Custody Official III and then, albeit temporarily, that of Superintendent of Corrections Institutions, had performed satisfactorily at both positions, and was qualified for the position of Corrections Cadet, Borrero-Rivera was never even contacted by the CRD to take the Examination for said position.

Plaintiffs contend that Secretary Molina issued discriminatory administrative policies and instructions which were implemented by the administrative staff of the CRD, including Sub-Administrator Marcano. They further aver that other less qualified and less experienced applicants who were NPP loyalists were recruited and/or reclassified to avoid the effects of Law 7 and are currently working for the CRD. According to Plaintiffs, they would have been reinstated to their positions of Custody Officials III for a reevaluation of their discharge and/or would have been granted entry to the Academy had it not been for their political affiliation with the PDP. Moreover, if they were considered as Custody Officials III at the time of their dismissal, Plaintiffs' seniority in the CRD exempted them under Law 7.

On December 6, 2010, Defendants filed the instant motion, arguing that Plaintiffs failed to state a prima facie case of political discrimination. Specifically, Defendants posit that the complaint does not set forth sufficient factual averments showing that Defendants knew about Plaintiffs' political affiliation to the PDP, and thus dismissal is warranted under Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plaintiffs opposed, alleging that they have pled sufficient

facts regarding Defendants' knowledge about their political affiliation to survive dismissal at this stage.

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[2] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be

---

[2] FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 550 U.S. at 559). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld *Twombly* and clarified that two underlying principles must guide this Court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a

context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

Therefore, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Twombly, 550 U.S. at 555). That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). In fulfilling this task, courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F. 3d 301, 305-06 (1st Cir. 2008).

**Applicable Law and Analysis**

The First Circuit has held that "[t]he right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico, 494 F.3d 1, 4 (1st Cir. 2007) (citing Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973)). As a general rule, "the First Amendment protects associational rights... [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F. 3d 26, 28 (1st Cir. 2004). Since public employees "generally enjoy protection from adverse employment actions based on their political affiliations," First Circuit law is clear that "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; see also Maymi v. P.R. Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008); Carrasquillo, 494 F.3d at 4 (citing Branti

**CIVIL NO. 10-1937 (SEC)**                                                                                      Page 7

v. Finkel, 445 U.S. 507, 517-19 (1980)).[3] This protection extends to career employees, trust employees, transitory employees, and independent contractors.  Martinez-Baez v. Rey-Hernandez, 394 F. Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)); see also O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712 (1996).

The Supreme Court has held that Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). In the instant case, Plaintiff essentially sets forth Section 1983 claims, based on alleged violations of the First Amendment. In order to prove liability under Section 1983, "plaintiffs must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Id. (citing Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006).  "While plaintiffs are not held to higher pleading standards in section 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero, 491 F. 3d at 10. Moreover, when alleging political discrimination under Section 1983, plaintiffs shall produce evidence that partisanship was a substantial or motivating factor in the adverse employment action. See Maymi, 515 F.3d at 25.

Political discrimination claims are reviewed through a burden-shifting scheme: the plaintiff must first show that "he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." Mt. Healthy v. Doyle, 429 U.S. 274, 287 (1977) (superseded on different grounds); Carrasquillo,

---

[3] The First Amendment also protects against other adverse employment actions, such as demotions. See Marrero v. Molina, 491 F. 3d 1 (1st Cir. 2007).

494 F.3d at 4; Padilla v. Rodríguez, 212 F. 2d 69, 74 (1st Cir. 2000). Thus in order to establish a prima facie case of political discrimination, a plaintiff shall demonstrate "that party affiliation was a substantial or motivating factor behind a challenged employment action." Marrero, 491 F. 3d at 9. The First Circuit has held that to meet the first step of the burden-shifting scheme, a plaintiff must "make four showings": (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's decision. Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006) (internal citation and quotation omitted); see also Monfort-Rodriguez v. Rey-Hernandez, 599 F. Supp. 2d 127, 168 (D.P.R. 2008).

When the plaintiff satisfies this initial burden, the burden then shifts to the defendant to show that "it would have taken the same action regardless of the plaintiff's political beliefs-commonly referred to as the Mt. Healthy defense." Padilla, 212 F. 2d at 74; Carrasquillo, 494 F.3d at 4; Torres-Martinez v. P.R. Dept. Of Corrections, 485 F.3d 19, 23 (1st Cir. 2007); Rodríguez-Ríos v. Cordero, 138 F. 3d 22 (1st Cir. 1998). That is, the defendants must "demonstrate that (i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." Velez-Rivera v Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006) (citing Mt. Healthy, 429 U.S. at 286-87). If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence. Id. at 153.

In the instant case, Defendants do not expressly dispute that Plaintiff and Defendants belong to opposing political parties and that Plaintiffs suffered an adverse employment action. Furthermore, they have not challenged Plaintiffs' assertions that they were acting under color

of state law, and that the conduct alleged in the complaint, which is deemed as true for purposes of this motion, deprived Plaintiffs of their First Amendment rights. Instead, Defendants argue that Plaintiffs have not shown that they knew about their political affiliation to the PDP at the time of the relevant events.

To show that Defendants knew about their political affiliation, Plaintiffs proffer the following facts: "[u]pon taking office, Secretary Molina recruited his trust staff, including Sub-Administrator Marcano, and immediately began to develop a scheme to fill the nontrust managerial positions at the CRD with NPP loyalists;""Secretary Molina, through his regional staff, began identifying those employees, such as plaintiffs, that had affiliations with the PDP so that they could be identified and targeted for replacement with NPP loyalists" and "through this scheme, Defendants learned about Plaintiffs' affiliation to the PDP;" "Plaintiffs' situation was presented to Sub-Administrator Marcano, who reaffirmed their discharge and stated that they would 'remain out' because they were members of the PDP;" "Plainitff's political affiliation was known to Defendants..."; and "Defendants learned of plaintiffs' PDP affiliation through their network of NPP-loyal trust employees..." See Docket # 1.

It is well-settled that general allegations alone such as that Plaintiffs' political affiliation was well known by Defendants, are conclusory and thus insufficient to show that Defendants knew about their political affiliations. Jimenez-Gonzalez v. Alvarez-Rubio, 683 F. Supp. 2d 177, 183-84 (D.P.R. 2010); Del Toro-Pacheco v. Pereira-Castillo, 662 F. Supp. 2d 202, 215 (D.P.R. 2009). Similarly, a plaintiff's general allegation that she is an active member of a political party fails to show that defendants were aware of his political affiliation. Rivera-Feliciano v. State Ins. Fund Corp., 652 F. Supp. 2d 170, 186 (D.P.R. 2009). This Circuit has held that even the fact that a plaintiff is a well-known supporter of that party, has political propaganda on his house or car, held trust positions when that party was in power, or suffered an adverse employment action

CIVIL NO. 10-1937 (SEC)                                                                                        Page 10

shortly after a change in administration, are insufficient to show that defendants must have been aware of his political affiliation. Rodriguez-Diaz v. Marrero-Recio, No. 10-1317, slip op. at 14 (D.P.R. Oct. 20, 2010); see also Gonzalez-Di Blasini v. Family Dept,, 377 F.3d 81, 85-86 (1st Cir. 2004) (affirming the district court's entry of summary judgment for defendants, upon finding that the fact that plaintiff was a well-known supporter of the opposing party, had held previous trust positions under said party's administration, and that was allegedly demoted after they assumed power, was insufficient to show that defendants knew about her political affiliation, and that said affiliation was the motivating factor for her demotion).[4]

In Gonzalez -De Blasini, 377 F.3d at 86, however, the Court recognized that a prima facie case for political discrimination may be built on circumstantial evidence.[5] After reviewing the complaint in the light most favorable to Plaintiffs, we find that they have "generated the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations" regarding each Defendants' knowledge of their political affiliation. Id. at 86. Although the fact that Secretary Molina recruited his trust staff, including Sub-Administrator Marcano, and filled the nontrust managerial positions at the CRD with NPP loyalists does not

---

[4] A plaintiff cannot prove that defendants had knowledge of her political affiliation merely through testimony of having been seen, or, for that matter, met during routine campaign activity participation, having been visited by the now incumbent while said defendant was a candidate to the position he now holds, or through knowledge of third parties. Roman v. Delgado-Altieri, 390 F. Supp. 2d 94, 102 (D.P.R. 2005). This district recently granted a municipality defendant's motion for summary judgment, holding that "none of the plaintiffs, except [a specified few] offer[ed] evidence that [defendant] had first-hand knowledge of their affiliations" with the opposing party. Díaz-Ortiz v. Díaz-Rivera, 611 F. Supp. 2d 134, 144 (D.P.R. 2009)(citations omitted); see also Roman, 390 F. Supp. 2d at 102 (citing Aviles-Martinez v. Monroig, 963 F.2d 2, 5, (1st Cir. 1992).

[5] That is, a plaintiff "need not produce direct evidence of discriminatory treatment (a so-called 'smoking gun') to establish a prima facie case of politically discriminatory demotion [or termination]." Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 26 (1st Cir. 2006).

show that he specifically knew about Plaintiffs' political affiliation,[6] Plaintiffs' claims that Secretary Molina, through his regional staff, began identifying those employees affiliated with the PDP in order to replace them with NPP loyalists show the requisite plausability that Molina knew about their political affiliation. On the other hand, the fact that when explained about Plaintiffs' situation, Sub-Administrator Marcano stated that they would "remain out" because they were members of the PDP does show that she had first hand knowledge about Plaintiffs' political affiliation at that time. A complaint need not provide detailed factual allegations, but instead must proffer sufficient factual averments that allow the court to infer that the defendant incurred in misconduct, which has been properly satisfied by herein Plaintiffs at this juncture. This, however, does not dispose of the case at bar. Plaintiffs must still show that their political affiliation was a substantial or motivating factor behind such adverse action.

The allegations in the complaint suggest that Defendants engaged in a scheme to ensure that Plaintiffs, and other PDP affiliates, were removed from their positions under Law 7. As a matter of fact, after Plaintiffs' dismissal, other CRD employees in fundamentally similar situations with less seniority, and who were NPP members were reevaluated, reinstated and are currently employed by the CRD Additionally, when "Plaintiffs' situation was presented to Sub-Administrator Marcano, [she] reaffirmed their discharge and stated that they would 'remain out' because they were members of the PDP." Thus there is sufficient circumstantial evidence showing that Plaintiffs' political affiliation was a motivating factor in their dismissal.

At the motion to dismiss stage, this Court need only find a plausible entitlement to relief in order for Plaintiffs' political discrimination to survive dismissal. Drawing all reasonable

---

[6] The allegation that "Defendants learned of plaintiffs' PDP affiliation through their network of NPP-loyal trust employees..." does not properly satisfy this prong of the prima facie case either.

**CIVIL NO. 10-1937 (SEC)** **Page 12**

inferences in Plaintiffs' favor, we conclude that such burden has been met. These issues may be revisited, if warranted, at summary judgment stage, after discovery is completed.

**CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of March, 2011.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge